RYAN v. EDWARDS.

(Supreme Court, Appellate Division, First Department. December 1, 1911.)

1. HUSBAND AND WIFE (§ 87*)—COLLATERAL SECURITY—NATURE OF TRANSACTION.

An assignment of mortgages by a partner's wife to the firm's creditor as "collateral security" for the debt, to be used after exhaustion of other security, constituted the giving of additional collateral, and not a guaranty of collection.

[Ed. Note.—For other cases, see Husband and Wife, Dec. Dig. § 87.*]

2. HUSBAND AND WIFE (§ 87*)—ADDITIONAL COLLATERAL SECURITY—DUTY OF CREDITOR.

A bank, taking collateral from a partner's wife as additional security for a firm debt, was bound to use reasonable diligence to realize on the prior collateral; but its negligence does not defeat her liability, if on using due care the amount remaining due would have exceeded the amount of the additional security.

[Ed. Note.—For other cases, see Husband and Wife, Dec. Dig. § 87.*]

Appeal from Special Term, New York County.

Action by Mary L. Ryan against John H. Edwards. Judgment for plaintiff, and defendant appeals. Reversed, and new trial granted.

Argued before INGRAHAM, P. J., and CLARKE, SCOTT, MILLER, and DOWLING, JJ.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

II. Aaron, for appellant.

Edward W. S. Johnston, for respondent.

SCOTT, J.   Defendant appeals from a judgment in an action for the cancellation of two assignments of mortgage given by plaintiff to the New Amsterdam Bank as security for the debts of the firm of Ryan & McFerran, under the following circumstances:

In July, 1906, the firm of Ryan & McFerran dissolved their partnership.   The firm then owed the New Amsterdam Bank something over $106,000.   It was in the business of contracting and building, and at the time of the dissolution owned a plant for brick-making at New Windsor, and held several uncompleted contracts, to wit, a contract with the city of New York for building an armory, a subcontract under the Carlin Construction Company for the erection of steel work in a stable for the street cleaning department, and a subcontract for the erection of a school building and the construction of a pumping plant at Gravesend.   It also owned horses, trucks, and tools.   By the dissolution agreement Ryan conveyed to McFerran all the firm assets, and the latter agreed to pay all the firm debts.   There was certain real estate at 147th street, bought by the firm's money, as to which Ryan and his wife agreed to and did assign to McFerran their interest.   There was other property, consisting of three houses and lots on the Boston Road, also purchased with the firm money, which McFerran agreed to and did transfer his interest in to the plaintiff.   Plaintiff sold two of these houses and took back mortgages.   On September 17, 1906, she assigned said mortgages to the bank by two written assignments under seal, for an expressed, though not paid, consideration of $100 each.   Each of these assignments contained the following clause, under which this controversy has arisen:

"It being understood and agreed by and between the attorneys [parties] hereto that this assignment is given as collateral security for the payment of the certain indebtedness of Ryan & McFerran to the party of the second part, and is to be used as such security only after the other collateral security deposited with the said party of the second part for said indebtedness has been exhausted, as well as the assets of the copartnership of Ryan & McFerran and of James McFerran, one of the members of said copartnership, and in any event is only to be used to the extent of five thousand dollars."

The plaintiff's claim appears to be that the execution of the assignments by plaintiff amounted to a technical guaranty of collection of the debts of Ryan & McFerran to the extent of $10,000, that the bank had neither exhausted its prior collateral nor used due diligence to collect the assets, and therefore that the guaranty evidenced by the assignments was discharged.

The court below seems to have taken this view of the matter.   It finds that neither the bank nor its receiver ever began any action against McFerran to recover from him the indebtedness mentioned in the assignments, but does not find that, if it had done so, it would have been able to recover the whole indebtedness.   In his opinion the learned justice goes into an exhaustive review of the firm's business, its assets, and its indebtedness to the bank, demonstrating that, if the bank had vigilantly pursued the collateral prior to plaintiff's

assignments, there would still be due to the bank upwards of $30,000, although he afterwards suggests that, if the bank had promptly moved, it might have discovered other assets.

[1, 2] In our opinion the cause was tried and decided on an entirely wrong theory. There was no guaranty of collection, but merely the giving of additional collateral for the pre-existing debt, already overdue. In such a case it is idle to talk about a guaranty of collection. If there had been such a guaranty, it would have been the duty of the bank to proceed at once to collect the prior collateral, including the assets of the firm in the hands of McFerran. But this would have been obviously contrary to the very object sought to be obtained by giving the additional security, which was clearly to induce the bank to postpone collection. All that the bank was under any obligation to do was to use due and reasonable diligence to realize on the prior collateral, and, if it failed to do so, all that plaintiff could do would be to defend against any attempt to realize upon her mortgage, by showing that, if due diligence had been used, there would have been no loss, or a less loss than $10,000. It may be, and probably is, true that the bank was less diligent than it should have been, especially after plaintiff's letter of February 1, 1907, insisting that it proceed at once to exhaust other remedies against McFerran before resorting to the security given by her. But, according to the careful analysis of the evidence by the trial justice, the plaintiff lost nothing by such negligence, because, if everything which can be said to have been lost by the negligence of the bank be charged up against the indebtedness, there would still remain due more than the amount of the security given by plaintiff.

It follows that the judgment appealed from must be reversed, and a new trial granted, with costs to appellant to abide the event. All concur.